UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Chao-Cheng Teng

      v.                              Civil No. 11-cv-281-JL
                                          Opinion No. 2013 DNH 092
Albert Bellemore, Jr., et al.


**MEMORANDUM ORDER**

Chao-Cheng Teng, proceeding pro se, brings this suit against a representative of the seller of condominium units in Seabrook, New Hampshire, a real estate agent who showed Teng the units, and that agent's former employer.  Teng alleges that the defendants refused to sell her one of the units on the basis of her race, thereby breaching a contract for the sale of the property and violating both the Fair Housing Act, 42 U.S.C. §§ 3604-05 and 42 U.S.C. § 1982, which prohibits discrimination in the sale of real property, see Jones v. Alfred H. Mayer Co., 392 U.S. 409, 413 (1968).  By virtue of Teng's federal claims, this court has jurisdiction over this matter under 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction).

The defendants have moved for summary judgment, see Fed. R. Civ. P. 56, arguing that the undisputed material facts fail to establish, or support a reasonable inference, that they racially

discriminated against Teng.  The seller's representative further argues that there was no contract for the sale of the property and even if there was, he cannot be held liable for its breach. After due consideration of the parties' submissions, the court agrees with the defendants (at least in part), and grants summary judgment in their favor.

## I.   **Applicable legal standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if it could reasonably be resolved in either party's favor at trial.  See Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010) (citing Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009)).  A fact is "material" if it could sway the outcome under applicable law. Id. (citing Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).  In analyzing a summary judgment motion, the court "views all facts and draws all reasonable inferences in the light most favorable to the non-moving party."  Id.

I.   <u>**Background**</u>[1]

Teng alleges that she is a non-Caucasian "minority."  The record evidence does not reflect Teng's race or ethnicity (in one of her memoranda, Teng implies that she is an "Asian immigrant," while defendants say she is "of Chinese descent"), but her status as a racial minority is, in any event, undisputed.

In early 2008, Teng contacted Pamela Bailey, then a licensed real estate agent employed in the Portsmouth, New Hampshire office of real estate broker Coldwell Banker.  Teng told Bailey that she was interested in purchasing a condominium unit on the beach in Hampton or Seabrook, New Hampshire, for under $100,000.  Although Teng did not want Bailey to be her agent, Bailey and Teng set up an appointment to view several properties.

_____

[1]The court derives these facts from the admissible evidence appended to the defendants' memoranda.  Teng's objections to defendants' motions make several assertions of fact that differ in some respects from the version of events related here.  Teng has submitted no evidence in support of her version, however, so the court cannot credit it, see Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 39 (1st Cir. 2004) ("[B]are allegations in a party's unsworn pleadings or in a lawyer's brief do not carry weight in the summary judgment calculus."), and thus accepts the version of the facts supported by defendants' evidence, see L.R. 7.2(b)(2) (moving party's properly supported material facts "shall be deemed admitted unless properly opposed by the adverse party.").  The court also has not credited the various inadmissible evidence the defendants have appended to their motions (e.g., documents nos. 43-6, 43-8).  See, e.g., Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 666 (1st Cir. 2010) (court may not consider inadmissible material on summary judgment).

On the day of their appointment, Bailey and Teng met at the
Seabrook Post Office and then drove in separate vehicles to the
first of three properties they would view that day, the Shore
Club Condominiums in Seabrook.  There they met the real estate
agent for Shore Club, Kara Schaake.  Although there were two
first-floor units at Shore Club available for $99,900--within
Teng's preferred price range--Teng was not interested in them due
to concerns about flooding, and asked to see units on the second
floor.  Schaake then showed Teng and Bailey two second-floor
units, both of which were priced at $109,900.

After spending over an hour at Shore Club, Teng and Bailey
left to view two other properties, neither of which Teng was
interested in.  When Teng asked Bailey to accompany her to view a
piece of land in Raymond, New Hampshire, Bailey declined and
advised Teng to drive by the property herself first, and to
contact Bailey if she was interested.  Bailey and Teng, who was
(in Bailey's words) "indignant" at Bailey's refusal to accompany
her to Raymond, then parted ways and had no further contact.

The following weekend, Teng arrived at an open house hosted
by Schaake at Shore Club, saying that Bailey had "quit on her."
Teng again viewed the available second-floor units and expressed
some interest in possibly purchasing one.  Schaake believed that
Teng might be confused about the nature of the property:  a

4

Seabrook zoning ordinance prohibited the Shore Club units from being used as a primary residence, a restriction also reflected in the Shore Club's condominium documents.  Concerned about both this issue and Teng's desire to make an offer without a buyer's agent, Schaake advised Teng to contact another local realtor to represent her.

Teng returned to Shore Club later that afternoon with a real estate agent.  Teng and her agent spoke to Albert Bellemore, a member of 419 Route 286, LLC, the owner and developer of the property.  They inquired whether it would be possible to replace the carpet in one of the units with tile.  Bellemore advised them that it would be possible, but informed them that he was not sure of the cost and that 419 would likely not agree to include any cost of replacement in the purchase price.

Teng and her new agent then repaired to the agent's office, where they wrote up an offer to purchase one of the second-floor units at Shore Club for $95,000.  The offer included several conditions, including that the seller replace the carpet floor with tile.  Upon receiving Teng's offer, Bellemore rejected it on 419's behalf as too low.  Using the New Hampshire Association of Realtors' standard form purchase and sales agreement ("P&S"), Teng then made a second written offer to purchase the unit for $102,000, with the same conditions.  The following day, Bellemore

made a counteroffer on behalf of 419, signing the P&S and initialing the changes on it.  The counteroffer agreed to most of Teng's conditions, but proposed a purchase price of $109,900 (the full asking price for the unit) and included a $650 credit toward Teng's replacement of the existing carpet with other flooring rather than agreeing to replace the floor.

Unhappy with the terms of the counteroffer, Teng attended another open house at Shore Club, where she again spoke to Bellemore.  Bellemore advised her that the counteroffer stood as presented and that 419 was unwilling to replace the carpet, but would still include the $650 credit outlined in the counteroffer. Teng told Bellemore that she would elect the $650 credit.

Attorney Mary Ganz subsequently contacted Schaake to request a copy of the P&S and condominium documents on behalf of Teng. Ganz informed Schaake that she would be handling title work and closing for the sale.  Teng also provided a $500 deposit for Schaake to hold in escrow.  Closing of the sale was scheduled for May 23, 2008.  On the day before the closing, Schaake contacted Ganz to confirm the time, and Ganz advised her that she had not been able to contact Teng to confirm a closing time, because Teng's cell phone was out of service.  On the day of the closing, Teng could not be contacted, and the closing was cancelled with the expectation that it would be rescheduled at a later date.

After cancellation of the closing, 419 provided Ganz with a release of escrow form to provide to Teng so her deposit could be returned to her if she decided not to proceed with the purchase. After repeated unsuccessful attempts to contact Teng to see if she was still interested in purchasing the property or if she wanted the escrow returned, Schaake and 419 put the property back on the market.  Both that unit, and the other second-floor unit that Teng had viewed, ultimately sold to third parties in August 2009.  The prices for which those units sold--and who purchased them--are not reflected in the record, but, according to Bellemore, they were somewhere below the original asking price of $109,900, reflecting a "downturn in the real estate market." Teng filed this action in this court on June 7, 2011.

## III. **<u>Analysis</u>**

As noted at the outset, and as discussed in this court's order of April 12, 2012, Teng's unverified complaint seeks recovery for the defendants' alleged violations of 42 U.S.C. §§ 1982 and 3604-05, as well as Bellemore's alleged breach of the P&S.  As none of Teng's claims withstands serious scrutiny, summary judgment is granted to the defendants on all claims.

7

### A.    Federal statutory claims

Each of the federal statutes under which Teng seeks relief prohibits discrimination in the sale of property.  Specifically, 42 U.S.C. § 3604(a), a provision of the Fair Housing Act ("FHA"), makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make available or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin," while § 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of race, color, religion, sex, familial status, or national origin."  The following section of the FHA makes it

> unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.

Id. § 3605(a).  Finally, 42 U.S.C. § 1982, a provision of the Civil Rights Act of 1866, provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  The Supreme Court has explained that this latter

statute "bars all racial discrimination, private as well as public, in the sale or rental of property." Jones, 392 U.S. at 413.

A plaintiff must show discriminatory intent to make out a claim under 42 U.S.C. § 1982. Dirden v. Dep't of Hous. & Urban Dev., 86 F.3d 112, 114 (8th Cir. 1996); Maciel v. Thomas J. Hastings Props., Inc., No. 10-cv-12167, 2012 WL 3560815, *13 (D. Mass. Aug. 16, 2012); see also Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982) (42 U.S.C. § 1981 "can be violated only by purposeful discrimination"); Garrett v. Tandy Corp., 295 F.3d 94, 103 (1st Cir. 2002) (explaining that, "[d]ue to the statutes' similar wording and common lineage," §§ 1981 and 1982 should be "construed in pari materia"). To prove an FHA violation, a plaintiff may "show either discriminatory intent or disparate impact." Macone v. Town of Wakefield, 277 F.3d 1, 5 (1st Cir. 2002). As pleaded in the complaint and later supplementary materials, and as articulated in Teng's objection memoranda, though, it appears that all of Teng's statutory claims are premised on the theory that the defendants intentionally discriminated against her.

Teng's objection memoranda complain about a wide variety of actions allegedly taken by the defendants. The only conduct she identifies that finds any footing in the record evidence, though,

is that Bellemore (a) rejected her offers of $95,000 and $102,000 for the condominium unit; (b) agreed to sell her the unit for $109,900, but did not consummate the sale; and (c) later sold the unit to another buyer for a lower price.  While Teng complains about supposedly discriminatory actions that Bailey and Coldwell Banker purportedly took, she has not proffered any evidence that they ever took those actions.  Summary judgment is therefore granted in favor of those defendants.

Teng asserts that Bellemore's actions were taken with the intent to discriminate against her.  To carry her burden of showing that Bellemore took these actions with discriminatory intent, Teng must either present direct proof of discriminatory intent or make her case under the familiar framework outlined by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  S. Middlesex Opportunity Council, Inc. v. Town of Framingham, 752 F. Supp. 2d 85, 96 (D. Mass. 2010); cf. Espinal v. Nat'l Grid NE Holdings 2, LLC, 693 F.3d 31, 34-35 (1st Cir. 2012) (describing this framework in context of employment discrimination case).  As Teng has not offered direct or circumstantial proof of Bellemore's discriminatory intent, the McDonnell Douglas framework applies.  Espinal, 693 F.3d at 34-35. This burden-shifting scheme first requires Teng to "make a prima facie case of discrimination."  Cham v. Station Operators, Inc.,

685 F.3d 87, 93 (1st Cir. 2012).  Once she has done so, the burden shifts to Bellemore to produce evidence that his actions "were taken for a legitimate, nondiscriminatory reason." Id. at 94 (internal quotation marks omitted).  At that point, the burden shifts back to Teng, who "must introduce sufficient evidence to support two findings:  (1) that [Bellemore's] articulated reason . . . is a pretext, and (2) that the true reason is discriminatory." Espinal, 693 F.3d at 35 (internal quotation marks omitted).

The court will assume, dubitante, that Teng has met her burden of making a prima facie case of discrimination at the first McDonnell Douglas stage.  See id. (adopting this approach in affirming district court's grant of summary judgment).  Her claims nonetheless founder at the second and third stages. Bellemore has produced evidence that all three actions about which Teng complains were taken for nondiscriminatory reasons. Specifically, he has produced evidence that he:

(a)  rejected Teng's offers because they were below the asking price, were less than what 419 had received for similar units at Shore Club, and included several conditions that imposed additional costs on 419;

(b)  did not sell the property to her for the full asking price because she did not show up at closing and could not be reached to confirm whether she wished to move forward with the sale; and

(c)   sold the property to a different buyer for a lower price due
      to a downturn in the housing market in the interim.

Teng has presented no evidence that these reasons were pretextual
(indeed, she has presented no evidence at all).  Because Teng has
not met her burden of showing that Bellemore acted with
discriminatory intent, the court also grants summary judgment to
Bellemore on Teng's statutory claims.

### B.   Breach of contract

Teng's claim against Bellemore for allegedly breaching the
P&S fares no better.  As discussed in Part I, supra, in
contracting with Teng, Bellemore was acting on behalf of 419
Route 286, LLC, the owner and developer of the property, of which
he was a member.  It is unclear whether Teng seeks to recover
from Bellemore due to his status as a member of 419, or because
he negotiated the P&S with her on 419's behalf and signed it in
his own name.  That distinction is irrelevant, however, because
Bellemore cannot be held liable under either theory.

Bellemore cannot be held liable on 419's contracts solely by
virtue of his status as a member of 419.  The New Hampshire law
pertaining to limited liability companies provides that the
"debts, obligations, and liabilities of a limited liability
company, whether arising in contract, tort, or otherwise, shall
be solely the debts, obligations, and liabilities of the limited

12

liability company," and "[n]o member or manager of a limited
liability company shall be obligated personally for any such
debt, obligation, or liability of the limited liability company
solely by reason of being a member or acting as a manager of the
limited liability company." N.H. Rev. Stat. Ann. § 304-C:23, I.
The New Hampshire Supreme Court has explained that under this
statute, "[a] member of an LLC generally is not liable for . . .
contractual obligations acquired by the LLC." Mbahaba v. Morgan,
163 N.H. 561, 565 (2012) (citation omitted).  To the extent Teng
seeks to hold Bellemore liable due to his status as a member of
419, then, the statute precludes her from doing so.

Nor can Bellemore be held liable because he negotiated and
signed the P&S with Teng.  "[A] manager or member, acting as an
agent of an LLC, is protected from personal liability for making
a contract where acting within his authority to bind the LLC."
Id. at 565 (emphasis, alterations, and internal quotations
omitted).  "Thus, where an LLC enters into a contract, the
[member's] signature on the contract, with or without a
designation as to his representative capacity, does not render
him personally liable under the contract." Id. (alterations and
internal quotations omitted).  "LLC members and managers who
disclose that they are contracting on an LLC's behalf are not
liable for a breach because they are not parties to the contract

13

--only the LLC itself is." Id. at 566 (citing Restatement (Second) of Agency § 328, at 80 (1958)).  Here, it is uncontested that Teng knew that Bellemore was not acting on his own behalf. Indeed, the P&S--which, it bears noting, Teng and her real estate agent drafted--clearly identifies the seller as "Shore Club Hotel Condominiums," not Bellemore.  (And in fact, Teng named that entity as a defendant in her complaint, but her claims against it were dismissed without prejudice after Teng failed to respond to this court's order that she demonstrate that it had been properly served.  See Order of Feb. 2, 2012.)  Bellemore is accordingly entitled to summary judgment on Teng's claim for breach of contract.[2]

---

[2]Bellemore has also argued that he is entitled to summary judgment on this claim because "there was no valid purchase and sales agreement."  Memo. of Law in Supp. of Bellemore Mot. for Summ. J. (document no. 47-1) at 20.  Viewing the evidence in the light most favorable to Teng, the court cannot embrace that conclusion.  The court does note, however, that on the present record, it appears that Teng materially breached the P&S by failing to tender the balance of the purchase price on the scheduled closing date.  See Purchase & Sales Agreement (document no. 43-14) at 1, §§ 3, 5.  That breach arguably discharged any duty 419 had under the P&S.  See Fitz v. Coutinho, 136 N.H. 721, 724-25 (1993).

IV.  **Conclusion**

For the reasons set forth above, the defendants' motions for summary judgment[3] are GRANTED.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: July 1, 2013

cc:  Chao-Cheng Teng, pro se
     John G. Cronin, Esq.
     Peter G. Callaghan, Esq.

---

[3]Documents nos. 43, 47.

15